IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

-NORTHERN DIVISION-

| | | |
|---|---|---|
| JOHN NORMAN HUFFINGTON, | * | |
| Plaintiff | * | |
| v. | * | Case No. 1:25-cv-02313-BAH |
| DAVID SANEMAN, *et. al,* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF DEFENDANT WESLEY J. PICHA'S MOTION TO DISMISS

### INTRODUCTION

This case arises out of Plaintiff John Huffington's (hereinafter "Huffington") claim that he was wrongfully convicted for the May 25th, 1981, murders of Joseph Hudson, Jr. (hereinafter "Hudson") and Diane Becker (hereinafter "Becker"). Huffington brings suit against David Saneman (hereinafter "Saneman"), Diana Cassilly, as personal representative of the estate of Joseph Ignatius Cassilly (hereinafter "Cassilly"), James William Van Horn, as personal representative of the estate of William Van Horn (hereinafter "Van Horn"), Bernadette M. Picha, as personal representative of the estate of Wesley J. Picha (hereinafter "Picha"), Jeffrey Gerard Comen, as personal representative of the estate of Gerard Comen (hereinafter "Comen"), and Harford County, Maryland (hereinafter the "County"), alleging that investigators and prosecutors engaged in misconduct during the original homicide investigation and subsequent criminal proceedings.

As the procedural history makes clear, Huffington was convicted by two separate juries – first in 1981, a conviction later reversed and remanded for a new trial, and again in 1983, a

1

conviction initially affirmed on appeal but subsequently vacated decades later following DNA testing that led to the granting of a new trial. Before that third trial could proceed, he entered an Alford plea in 2017, formally maintaining his claim of innocence while acknowledging the sufficiency of the State's evidence to convict. No court has ever declared Huffington to be innocent of these crimes. His later gubernatorial pardon, issued in 2023, was an act of executive clemency by the Governor of Maryland, not a judicial determination of innocence by any fact-finding tribunal.

Wesley J. Picha, left behind a dignified career as a former Deputy for Harford County, Maryland, departed this life on May 25th, 2019. On September 25th, 2025, years after Mr. Picha's passing, the Plaintiff served a First Amended Complaint on the undersigned personal representative of Mr. Picha's Estate, loosely with bald conclusory statements alleging various civil causes of action against Picha under federal and state law that occurred some approximate forty-four (44) years ago. Mr. Picha is rendered powerless to admit or deny the bald factual conclusory allegations made against him in the Amended Complaint.

The Complaint seeks an unspecified amount of damages against Picha's newly opened and small estate even though the Plaintiff has been awarded $2.9 million under Maryland's version of the Walter Lomax Act. As more fully explained below, the Plaintiff's Amended Complaint is barred by the doctrine of limitations, qualified immunity, collateral estoppel, judicia estoppel, and otherwise fails to state a claim for which relief can be granted. The Suit must be dismissed as to all counts against Mr. Picha.

## FACTS AS ALLEGED IN THE COMPLAINT

Generally, Huffington alleges that he was wrongfully convicted more than forty years ago for the 1981 murders of Joseph Hudson, Jr. and Diane Becker as a result of purported

2

misconduct by investigators with the Harford County Sheriff's Office and by the Harford County State's Attorney's Office. ECF 16, at ¶¶ 1–2. Plaintiff asserts that investigators and prosecutors allegedly fabricated or coerced statements, withheld exculpatory information, and otherwise mishandled evidence during the homicide investigation, leading to his arrest and conviction. *Id*. at ¶¶ 2–6.

Of the 234 paragraphs in the Complaint, only ¶¶ 21, 45, 84, 98, 99, 100, 101 contain factual allegations against Mr. Picha. Counts 1-3 and 6-10 purport to set forth causes of action against him. They read as follows:

Complaint, ¶ 21, reads: "Mr. Picha was a deputy with the Harford County Sheriff's Office whose conduct resulted in Plaintiffs wrongful arrest, conviction, and imprisonment." *Id*.

Complaint, ¶ 45, reads: "Hudson's best friend, Ernest Bohanan, had come to the Campground and briefly spoke with investigators. Bohanan left without providing much information, but phoned police later, around 6:30 p.m., to tell Defendant Wesley Picha that he could not talk down at the Campground because of all the people nearby, but that he knew who killed Joe Hudson. Hudson had told Bohanan that he was in serious debt to his drug suppliers, namely a man named '"Phillip" who had paid a visit to Hudson's trailer two weeks earlier and threatened him. Hudson had told Bohanan that Phillip and his associates would "kill him if he didn't pay up." Hudson had not paid-up. Additional witnesses would tell police that Hudson and Becker were terrified for that reason and others." *Id*.

Complaint, ¶ 84, reads: "About 4:10 p.m., on the opposite side of the road, Saneman and Deno identified a clear, one-gallon, Smirnoff-branded vodka bottle - not a whiskey bottle - "lying in the wooded area approx. ten feet from the edge of the road" Despite John having allegedly wiped down the evidence, "[t]he bottle contained what appeared to be extensive blood

stains on the bottom area and label area of the bottle." Defendant Picha initialed the bottle on the cap, photographed these items, and took them into custody. He did not, however, take the revolver and knife with him, which Saneman kept in the trunk of his car. A "torn note" was also recovered, according to the report." *Id*.

Complaint, ¶ 98, reads: "On May 27, at 5:10 p.m., Saneman gave the knife, sheath, gun, and holster to Picha. Saneman had them since the prior afternoon and put them into the trunk of his vehicle." *Id*.

Complaint, ¶ 99, reads: "Investigators' odd deference to Deno continued. At 5:21 p.m., on May 27, Picha responded to Deno's attorney's law office. There, the attorney turned over some of the clothing that he and Deno claimed that Deno wore during the murders, including a blue shirt, black pants, yellow/orange Hanes underwear, and socks (white with blue and yellow stripes). They noted that the clothes "had been washed using no bleach but warm water. [the attorney] also stated Ms. Kanaras advised that she had used Tide detergent to wash the clothes." Investigators did not ask when they were washed (or did not document it), despite the fact that they had alerted Mr. Kanaras to the investigation prior to 6:00 p.m. on May 25, and they never sought a search warrant of the home." *Id*.

Complaint, ¶ 100, reads: "Nearly two hours later, at 7:08 p.m., Picha went to the Kanaras residence in Perry Hall, at the request of Dena's attorney, to pick up a jacket and shoes Deno claimed he had been wearing during the murders. Dena's father handed Picha "a shopping bag which contained one black leather jacket and one pair of brown boots." *Id*.

And Finally, Complaint, ¶ 101, reads: "Thereafter, Picha went to the Baltimore County Police Department, Fullerton Station, and advised an officer "of the situation of the Kanaras'

4

(sic) possibly being in danger. [The officer] stated he would advise cars in the area to patrol the residence." *Id*.

With these, generalized, bald conclusory statements, The Estate of Wesley J. Picha; which frankly show absolutely no police or investigatory misconduct, The Estate of Wesley J. Picha must defend the following causes of action as alleged against him stemming from actions, or inactions, alleged to have occurred in 1981, almost forty-four (44) years ago:

> Count I - 42. U.S.C. § 1983: Deprivation of Liberty Without Due Process of Law
>
> Count II - 42 U.S.C. § 1983: Malicious Prosecution
>
> Count III - 42 U.S.C. § 1983: False Arrest
>
> Count VI - 42 U.S.C. § 1983: Civil Rights Conspiracy
>
> Count VII - Maryland Common Law: False Arrest
>
> Count VIII - Maryland Common Law: False Imprisonment
>
> Count IX - Maryland Common Law: Malicious Prosecution
>
> Count X - Maryland Common Law: Intentional Infliction of Emotional Distress

At all times relevant, Wesley J. Picha was acting as a deputy with Harford County Sherriff's Office for Harford County, State of Maryland. (Complaint, ¶ 21.) In November 2010, Huffington "filed a petition for writ of actual innocence" based on a tainted forensic hair analysis offered into evidence at his trial. (Complaint, ¶131.) Thus, for almost 15 years before filing this action, Huffington had actual knowledge that Harford County State's Attorney Joseph Cassilly failed to disclose evidence that a hair sample witness called at his trial was deemed unreliable. (Complaint, ¶7.) Huffington eventually "filed a Bar Complaint against Cassilly" for the disclosure failure. (Complaint ¶155.) Cassilly was later disbarred. (Complaint ¶¶3, 156.)

5

*Attorney Grievance Commission v. Cassilly,* 476 Md. 309 (2021). Huffington never lodged a formal Grievance against Mr. Picha, while living or deceased.

Despite, for years, actually or constructively knowing that he may have had a cause of action against some of the named Defendants, Huffington waited until 2025 to docket this lawsuit. By the, Mr. Picha has been deceased for over 6 years, having unfortunately passed on May 25th, 2019 (Complaint ¶21), barring his ability to defend the factual allegations of the Complaint forever. The Amended Complaint also seeks punitive damages against the deceased Defendant. (Complaint p. 41.)

## STANDARD FOR CONSIDERATION OF RULE 12(b)(6) MOTION TO DISMISS

Pursuant to Rule 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is … and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. "Factual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Fed. Practice and Procedure § 1216, pp. 235-36 (3rd ed. 2004)). In ruling on a Rule 12(b)(6) motion to dismiss, a court may "consider documents attached to the complaint … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). *Accord*, *White Tail Park, Inc. v. Stoube*, 413 F.3d 451, 459 (4th Cir. 2005) (court may

consider evidence outside the pleadings without converting 12(b)(6) proceeding to proceeding for summary judgment). "When ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, (2007).

## ARGUMENTS

### I. ALL COUNTS OF THE COMPLAINT AGAINST MR. PICHA FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

The Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) as it fails to satisfy the "plausibility" standard as adopted by the U.S. Supreme Court. The Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, (2009)(quoting *Twombly* at 570) "To survive a motion o dismiss , a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* at 678. The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. In applying this standard, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth." *Id*. at 678-679.

As noted *supra*, the Amended Complaint, only mentions Mr. Picha's factual allegations of actions, or inactions, in ¶¶ 21, 45, 84, 98, 99, 100, 101. To put it in the simplest manner possible, nowhere in these paragraphs, nor elsewhere in the Amended Complaint, is there a factual allegation of wrongdoing of any fashion by Mr. Picha. Thus, all of Huffington's claims against the Estate of Wesley J. Picha should be dismissed for failure to state a claim for which relief can be granted.

## II. ALL COUNTS OF THE COMPLAINT AGAINST MR. PICHA ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

In Maryland, the statute of limitations for a claim under 42 U.S.C. § 1983 (civil rights claim) is three years. *Owens v Baltimore City State's Attorney's Office,* 767 F.3s 379 (2014). Federal courts apply the state's general statute of limitations for personal injury actions to §1983 claims. *Id.* In Maryland, the general statute of limitations for personal injury actions is three years under Md. Code, Courts & Judicial Proceedings § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period.") If a §1983 action is based on wrongful conviction prosecution, the accrual date may be delayed. *Heck v Humphrey,* 512 U.S. 477 (1994). A claim typically accrues when the plaintiff knew or should have known of the injury that forms the basis of the action. *Owens, supra,* 767 F.3d at 389-90.

In November 2010, Huffington actually knew, or should have known, that he had a case against some of these Defendants. That is when he "filed a petition for writ of actual innocence" based on evidence related to tainted hair sample testimony at his trial. Complaint ¶131.) Simply put, 15 years prior to filing this suit Huffington had actual knowledge that the Harford County State's Attorney Joseph Cassilly failed to disclose evidence that a hair sample witness called at his trial was deemed unreliable. (Complaint ¶7.) He did not file suit within 3 years of acquiring this knowledge in 2010.

In November 2011, Huffington acquired more actual knowledge that he had a case against some of these Defendants. That is when he filed a supplemental petition for innocence. After acquiring additional information from a reporter that Harford County State's Attorney Joseph Cassilly failed to disclose evidence that a hair sample witness called against him at his trial was

8

unreliable (Complaint ¶136.). Yet, Huffington did not file suit within three (3) years of November 2011. Further, the applicable statute of limitations can just as easily be accrued on November 9th, 2017, the date Huffington entered an *Alford Plea*. Yet again, Huffington did not file suit within three (3) years of November 2017 either.

The statute of limitations is specifically designed to protect against the prosecution of stale claims, long after memories have faded, witnesses are unavailable, and evidence might be lost. See *Hecht v. Resolution Trust Corp.*, 333 Md. 334 (1994), see also *Doe v. Maskell*, 342 Md. 684 (1996). Huffington did not file suit until 2025, after Mr. Picha's voice had been silent for over 6 years due to his death. In short, Huffington guaranteed Mr. Picha's inability to defend himself against 44-year-old allegations. Thus, all of Huffington's claims against the Estate of Wesley J. Picha are barred by the statute of limitations.

### III.   ALL COUNTS OF THE COMPLAINT AGAINST MR. PICHA ARE BARRED BY ENTITLEMENT TO QUALIFIED IMMUNITY.

Qualified immunity shields law enforcement officers from civil liability when their conduct does not violate a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome this immunity, a plaintiff must plausibly allege: (1) that the officer violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the complaint fails to allege a violation of any constitutional right, "the official is hardly in need of any immunity and the analysis ends right then and there." *Evans v. Chalmers*, 703 F.3d 636, 646-649 (4th Cir. 2012) (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)).

Plaintiff alleges no conduct by Mr. Picha that was unlawful, much less "clearly established" as such in 1981. The Complaint reflects only hindsight disagreement with an investigation that

9

led to indictments, convictions, and decades of judicial validation. Qualified Immunity exists precisely to protect officers from such retrospective second-guessing. Thus, all federal claims against the Estate of Wesley J. Picha should therefore be dismissed on qualified immunity grounds.

## IV.   ALL COUNTS OF THE COMPLAINT AGAINST MR. PICHA ARE BARRED BY JUDICIAL AND COLLATERAL ESTOPPEL

All of Huffington's § 1983 claims rest on the premise that he did not commit the murders of Joseph Hudson, Jr. and Diane Becker. This premise is directly contradicted by the repeated judicial determinations in his criminal cases despite any other factors or determinations by others or other agencies or entities. Under both judicial and collateral estoppel principles, a party is barred from relitigating issues that were necessarily decided in a prior proceeding. Judicial estoppel precludes a party from asserting a position in a later proceeding that is inconsistent with one successfully asserted in an earlier proceeding. See *Todd v. Baskerville*, 712 F.2d 70, 73–74 (4th Cir. 1983). Collateral estoppel (issue preclusion) prevents relitigating of issues that were actually decided and essential to a prior judgment. See *Holsey v. Bass*, 519 F. Supp. 395 (D. Md. 1981) ("After direct appeals, three state post-conviction proceedings, six federal habeas petitions, and numerous civil rights suits, it is inconceivable that there remains an issue which has not yet been fully explored or waived."); see also *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) (holding that a defendant who benefited from a plea agreement cannot later challenge underlying actions inconsistent with that agreement).

Applying these doctrines, Huffington cannot now challenge the outcome of his convictions or base civil claims on an assertion of innocence. Each of his claims necessarily assumes that he

was wrongfully convicted. Because these issues were fully litigated and resolved adversely to him in multiple state and federal court proceedings, Huffington is judicially and collaterally estopped from asserting claims premised on his factual innocence. This was emphasized in Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) in which the U.S. Supreme Court found a plaintiff may not bring a § 1983 claim that would "necessarily imply the invalidity" of a conviction that has not been reversed, expunged, or otherwise invalidated. Huffington's Alford plea, affirmed convictions, and subsequent post-conviction adjudications establish that his underlying convictions remain legally valid, and any claim premised on factual innocence is foreclosed. Thus, because each of Huffington's claims depends on a mere assertion of innocence, and because the courts have repeatedly adjudicated these issues against him, all of Huffington's claims against the Estate of Wesley J. Picha are barred by judicial and collateral estoppel.

## V.     PLAINTIFF'S DUE PROCESS CLAIM FAILS (Count I).

Huffington asserts a due process claim under 42 U.S.C. § 1983, alleging that investigators suppressed or fabricated evidence. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression by the prosecution of evidence favorable to an accused violates the Due Process Clause where the evidence is "material either to guilt or punishment." *Owens*, 767 F.3d at 396. This rule extends to police investigators. *Id*. As the Fourth Circuit has recognized, withholding favorable evidence by law enforcement violates due process regardless of whether the prosecutor is aware. See *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846–47 (4th Cir. 1964). To establish a *Brady*-based § 1983 claim, a plaintiff must show: (1) the evidence was favorable; (2) the defendant suppressed it in bad faith; and (3) prejudice resulted, such that there is a reasonable probability the outcome would have been different. *Owens*, 767 F.3d at 396–97 (citing *Monroe v. Angelone*, 323 F.3d 286, 299–300 (4th Cir. 2003). "Prejudice ensues if "there is a reasonable

11

probability" that the jury would have reached a different result had the evidence been properly disclosed." *Owens*, 767 F.3d at 397 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, Huffington does not and cannot allege that Picha suppressed evidence or misled the prosecution. As noted *supra*, the Amended Complaint, only mentions Mr. Picha's factual allegations of actions, or inactions, in ¶¶ 21, 45, 84, 98, 99, 100, 101. To put it in the simplest manner possible, nowhere in these paragraphs, nor elsewhere in the Amended Complaint, is there a factual allegation of wrongdoing of any fashion by Mr. Picha. Thus, Huffington fails to state claims against the Estate of Wesley J. Picha for violation of due process and count I should be dismissed.

## VI.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS FAIL (Counts II and IX).

Malicious prosecution is distinct from false imprisonment and requires a favorable termination of the underlying proceedings. *Owens*, 767 F.3d at 390 (citing Keeton et al., Prosser & Keeton on Torts § 119). Under common law, the statute of limitations for malicious prosecution does not begin to run until the proceedings are resolved in the plaintiff's favor, in a manner that cannot be revived. *Id*. Procedural victories, including the grant of a new trial, do not satisfy this requirement. *Id*.

Huffington entered an *Alford Plea* in November 2017. An *Alford Plea* acknowledges the sufficiency of the State's evidence while maintaining innocence and is not a final disposition in Plaintiff's favor. See *Thompson v. Clark*, 596 U.S. 36, 49, 142 S. Ct. 1332, 1341, 212 L. Ed. 2d 382 (2022) ("A [claim under §1983 for malicious prosecution] plaintiff need only show that the criminal prosecution ended without a conviction."); see also *Daulatzai v. Maryland*, 340 F.R.D. 99, 104 (D. Md. 2021) (An *Alford Plea* is not a favorable outcome that would permit Plaintiff to

meet the favorable-outcome element of his claim.) In fact, "courts of appeals and courts in this district that have considered the question have squarely confirmed 'that a conviction based on an *Alford Plea* can be used to impose *Heck's* favorable termination rule.'" *Daulatzai*, 340 F.R.D., at 10. Because Plaintiff pled guilty, and there was never a judicial determination of innocence or a favorable final disposition, Huffington's malicious prosecution claim fails.

Even if one were to consider a procedural endpoint such as release in July 2013, the three-year limitations period still expired prior to the filing of this action with respect to any § 1983 claims premised on alleged wrongful prosecution. See *Owens*, 767 F.3d at 391.

Even apart from the limitations issue, the Amended Complaint fails to state a claim for malicious prosecution. "To establish a claim for malicious prosecution, a plaintiff must allege: (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Daulatzai*, 340 F.R.D., at 102 (quoting *Heron v. Strader*, 361 Md., at 761 A.2d 56; see also *Nasim v. Tandy Corp.*, 726 F. Supp. 1021, 1024 n.4 (D. Md. 1989), aff'd, 902 F.2d 1566 (4th Cir. 1990) (Plaintiff is required to establish all four elements of malicious prosecution.). Huffington cannot satisfy these elements because: (i) Picha's involvement was limited to investigating the case and developing probable cause; (ii) probable cause existed as Huffington was arrested on May 26, 1981, and found guilty by two juries; (iii) there is no allegation of malice or improper motive specific to Picha; and (iv) there was never a termination of the proceedings in Huffington's favor. Thus, Huffington fails to state claims against the Estate of Wesley J. Picha for malicious prosecution and counts II and IX should be dismissed.

VII. **PLAINTIFF'S FALSE IMPRISONMENT AND FALSE ARREST CLAIMS FAIL (Counts III, VII, and VIII).**

A claim for false imprisonment accrues at the end of the detention period, not at its outset. *Wallace v. Kato*, 549 U.S. 384 at 389–92, (2007). The tort protects against unlawful confinement, but the statute of limitations does not begin until the plaintiff's detention terminates. *Id*.

Huffington was arrested on or about May 26th, 1981, and detained continuously until his release from custody in July 2013, pending a new trial. Applying the common-law accrual rule, Huffington's cause of action for false imprisonment began, at the earliest, in July 2013, when his conditional confinement ended. Even assuming the limitations period began at the absolute end of his detention, the three-year limitations period expired well before this action was filed. All facts underpinning Huffington's allegations (i.e., his arrest, conviction, and post-conviction detention), were known or reasonably should have been known to him prior to 1998, as evidenced by prior judicial determinations. *Owens*, 767 F.3d at 388–90. Thus, his false imprisonment claim is time-barred.

Notwithstanding Plaintiff's failure to timely bring this claim, the Amended Complaint fails to state a claim for false imprisonment. To establish a claim for false imprisonment under Maryland law, a plaintiff must show "(1) the deprivation of liberty of another; (2) without consent; and (3) without legal justification." *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 330–31 (D. Md. 2012) (quoting *Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56 (2000)); see also *Gray v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002).[1] Further, "there

---

2 "The elements of false arrest and false imprisonment are identical." *Gray*, 228 F. Supp. 2d, at 641.

must be some direct restraint of the person," through force or threat of force, which Huffington has not alleged here against any Defendant; however, most certainly not against Picha. See *Estate of Jones*, 903 F. Supp. 2d at 331 (quoting *Mason v. Wrightson*, 205 Md. 481, 487, 109 A.2d 128 (1954)). Picha's role in the investigation was limited to gathering facts and developing probable cause and did not constitute an unlawful restraint. Picha did not directly restrain Huffington, nor did he threaten him with force. In fact, Huffington's arrest and imprisonment remains legally justified because he was found guilty on two occasions and pled guilty in 2017. Thus, even apart from the statute of limitations, Huffington fails to state claims against the Estate of Wesley J. Picha for false imprisonment or false arrest and counts III, VII, and VIII should be dismissed.

## VIII. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS (Count VI)

A claim for civil conspiracy in Maryland requires proof of an agreement or understanding between two or more persons to commit an unlawful act or use unlawful means to accomplish an act not in itself illegal, resulting in actual legal damage to the plaintiff. Maryland law consistently holds that civil conspiracy is not an independent tort but rather a mechanism for holding co-conspirators liable for the underlying tortious act. The courts have also emphasized that the plaintiff must demonstrate an overt act in furtherance of the conspiracy that caused actual injury. In, *Windesheim v. Larocca*, 443 Md. 312, (2015) the Maryland Court of Appeals held that civil conspiracy requires proof of a confederation of two or more persons, an unlawful or tortious act done in furtherance of the conspiracy, and actual legal damage to the plaintiff. *Id*. See also, *L-3 Communs. Corp. v. Serco, Inc*., 926 F.3d 85, (2019). Further, in, *Hoffman v. Stamper*, 385 Md. 1, (2005) the Maryland Court of Appeals reiterated that the tort lies in the act causing harm, and the agreement itself is not actionable but serves as an aggravating factor. The

15

court upheld the principle that civil conspiracy cannot independently sustain an award of damages without an underlying tortious injury.

Here, the Amended Complaint is void of the necessary specific allegations against Picha which allege: 1) that he conspired or agreed with any other person for anything whatsoever, 2) that he committed an unlawful or tortious action, 3) that he furthered by agreement any conspiracy. Thus, Huffington fails to state a claim against the Estate of Wesley J. Picha for civil conspiracy and count VI should be dismissed.

## IX. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS (Count X)

A claim for intentional infliction of emotional distress ("IIED") is disfavored in Maryland, difficult to establish, and is "rarely viable." See *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023) (quoting *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md. 2011)). To state a claim for IIED, a plaintiff "must allege: (1) conduct that is intentional or reckless; (2) conduct that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) emotional distress that is severe." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 651–52 (D. Md. 2007) (quoting *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977). Plaintiffs must plead with specificity, as reciting conclusory elements is insufficient. *Vance v. CHF Int'l,* 914 F. Supp. 2d 669, 683 (D. Md. 2012). The "extreme and outrageous" standard is very high. *Lilly*, 694 F. Supp. 3d, at 596 (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 665 A.2d 297, 319 (1995)). The conduct must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized [community]." *Lilly*, 694 F. Supp. 3d,

at 596 (quoting *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247–48 (D. Md. 1998) (citations omitted)).

Here, Huffington's allegations in relation to Picha are nothing more than bald conclusory statements and fail to identify any specific conduct by Picha that could be considered extreme or outrageous. Thus, Huffington fails to state claims against the Estate of Wesley J. Picha for IIED and Count X must be dismissed.

## CONCLUSION

WHEREFORE, The Estate of Wesley J. Picha, respectfully requests that this Honorable Court dismiss the Amended Complaint with prejudice, and grant any such other relief as the nature of its cause may demand.

Respectfully Submitted,

*/s/ Tyler J. Nowicki*

Tyler J. Nowicki, Esq.
(Federal Bar No. 29581)
Nowicki & Associates, P.A.
727 North Hickory Avenue
Bel Air, Maryland 21014
P: 410-879-0026
F: 410-893-8199
Tnowicki@nowickifirm.com
*Attorneys for Defendant Picha*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2025, a copy of the foregoing was electronically filed and is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that the CM/ECF system will accomplish service, with notice to:

Hannah M Ernstberger, Esq.
Saller, Ernstberger, & McElroy
10 South Street
Ste Floor 6
Baltimore, MD 21202
P: 410-783-7945
hernstberger@sallerlaw.com

Brian Howard Eldridge, Esq.
Jay R Kasperbauer, Esq.
John Shannon Marrese, Esq.
Hart McLaughlin & Eldridge
1 S. Dearborn
Ste 1400
Chicago, IL 60603
P: 312-955-0545
F: 312-971-9243
beldridge@hmelegal.com
jkasperbauer@hmelegal.com
jmarrese@hmelegal.com
*Counsel for Plaintiffs*

Jefferson L. Blomquist, Esq.
Joseph G. Comeau, Esq.
J. Ethan Clasing, Esq.
Harford County Department of Law
220 S. Main Street, 3rd Floor
Bel Air, MD 21014
P: 410-638-3205
F: 410-879-7651
jlblomquist@harfordcountymd.gov
jgcomeau@harfordcountymd.gov
jeclasing@harfordcountymd.gov
*Counsel for Defendant,*
*Harford County, Maryland*

Jeffrey Gerard Comen, Esq.
4 Dalebrook Drive
Phoenix, Maryland 21131
P: 443-564-1902
jgc2646@verizon.net
*Counsel for Jeffrey Gerard Comen*
*as Personal Representative of the Estate of*
*Gerard Comen*

Diana Cassilly
402 Old Joppa Road
Fallston, Maryland 21047
*Defendant, As Personal Representative*
*of the Estate of Joseph Cassily*

James William Van Horn
807 Wiesser Court
Joppa, Maryland 21085
*Defendant, As Personal Representative*
*of the Estate of William Van Horn*

Kevin Karpinski, Esq.
Bently C. Green, Jr., Esq.
120 East Baltimore Street, Suite 1850
Baltimore, Maryland 21202
P: 410-727-5000
kevin@bkcklaw.com
bgreen@bkcklaw.com
*Counsel for Defendant,*
*David Saneman*

    /s/ *Tyler J. Nowicki*
    Tyler J. Nowicki, Esq.
    *Attorneys for Defendant Picha*