**IN THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOHN NORMAN HUFFINGTON, | * | |
| *Plaintiff*, | * | |
| v. | * | No. 1:25-cv-02313-BAH |
| | * | |
| DAVID SANEMAN, ET. AL., | | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant, State's Attorney for Harford County[1] ("the State's Attorney"), by her undersigned counsel, files this memorandum in support of her motion to dismiss respectfully requesting that this Honorable Court dismiss the official capacity claims.

**INTRODUCTION**

Mr. Huffington sued the State's Attorney alleging that prosecutors engaged in misconduct during the criminal proceedings against him. In the early 1980's, Mr. Huffington was charged and convicted of with murdering two persons. During the late 1990's Mr. Huffington asserted that the State's Attorney failed to reveal evidence that

---

[1] The Amended Complaint names Diana Cassilly, as Personal Representative of the Estate of Joseph Ignatius Cassilly, deceased, in his official capacity. An estate cannot be sued in an official capacity; however, a State officer may be. When a State officer dies, an official capacity claim is made against the successor officer. *Kentucky v. Graham*, 472 U.S. 159, 165-168 (1985). At the time of the alleged acts in question, Mr. Cassilly was serving as State's Attorney for Harford County. The current State's Attorney for Harford County is Alison M. Healy. In general, in this document, the term "State's Attorney" will refer to the office holder at the time of the event at issue.

indicated that the DNA testing results linking Mr. Huffington to the crime were inaccurate. In 2013, Mr. Huffington was granted a new trial and released from incarceration. In 2017, before the new trial went forward, Mr. Huffington entered an Alford plea in exchange for a dismissal.

Mr. Huffington asserted two official capacity claims against the State's Attorney. Count IV is a Monell liability claim relating to non-disclosure of exculpatory material. Count V is a Monell liability claim relating to evidence fabrication and witness coercion. Both claims must fail. The State's Attorney is a State official, not a local one. Therefore, official capacity claims are barred by the Eleventh Amendment. Since Monell liability claims can only be brought against local government, a Monell claim against a State official is not permitted. Finally, Mr. Huffington failed to file suit within the applicable statute of limitation.

## FACTS ALLEGED IN AMENDED COMPLAINT

More than forty years ago, Mr. Huffington was convicted of the murders of Joseph Hudson, Jr., and Diane Becker (ECF 16, ¶ 1). The original conviction occurred on November 13, 1981 (ECF 16, ¶ 112). That conviction was reversed, and the case was remanded for a new trial (ECF 16, ¶ 115). By the time of the second trial in November 1983, Joseph Cassilly was the State's Attorney (ECF 16, ¶ 116). He was one of the trial prosecutors (ECF 16, ¶ 116). Mr. Huffington was convicted again (ECF 16, ¶ 117). The second conviction was affirmed on appeal (ECF 16, ¶ 119). Additional appeals and post-conviction proceedings followed (ECF 16, ¶ 123).

On June 18, 1997, the United States Department of Justice ("DOJ") advised the State's Attorney about an ongoing investigation about the techniques used by FBI Agent Malone (ECF 16, ¶ 125).  Agent Malone's testing was evidence in the State's case against Mr. Huffington (ECF 16, ¶ 125).  On October 21, 1999, a senior DOJ attorney sent a letter to the State's Attorney advising that Agent Malone had testified falsely in Mr. Huffington's case (ECF 16, ¶ 128).  Neither DOJ letter was provided to Mr. Huffington or his counsel (ECF 16, ¶ 129). In 2010, Mr. Huffington filed a petition for a writ of actual innocence based on evidence related to Agent Malone's false testimony (ECF 16, ¶ 131).  In November 2011, a reporter provided Mr. Huffington with a copy of the 1999 letter (ECF 16, ¶ 135).

In May 2013, the court granted Mr. Huffington a new trial based on new DNA testing which revealed that Mr. Huffington was not the source of the hair found at the murder scene (ECF 16, ¶ 137).  In July 2013, Mr. Huffington was released from prison pending a new trial (ECF 16, ¶ 139).  In November 2017, Mr. Huffington entered an *Alford* plea "aware of [the State's Attorney's] willingness to violate his rights, break the rules, and withhold and fabricate evidence…" (ECF 16, ¶ 145). In 2018, Mr. Huffington filed a Bar complaint against the State's Attorney (ECF 16, ¶ 155).  In 2021, the State's Attorney was disbarred based on misconduct in this case (ECF 16, ¶ 156).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc., v. Matkari*, 7 F.3d 1130,

1134 (4th Cir. 1993). This Court should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party." *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). This Court, however, may disregard conclusions of law or unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine legal sufficiency of the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The purpose of the pleading requirement is "to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal*, 248 F.3d at 326 (quoting *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

## ARGUMENT

**I.   PLAINTIFF'S CLAIMS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.**

The Eleventh Amendment of the United States Constitution bars a suit in federal

court against a State, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the State's sovereign immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalfe and Easy, Inc.*, 506 U.S. 139, 144-45 (1993); *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989); *Pennhurst State School & Hospital v. Haldeman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001); U.S. Const. amend. XI; Md. Code Ann., Const., Art IV, § 1. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett,* 531 U.S. at 363. "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Pennhurst,* 465 U.S. at 99. Although Maryland has waived its sovereign immunity for certain actions brought in its state courts under the Maryland Torts Claims Act, Md. Code Ann., State Gov't § 12-101 *et seq.*, it has not waived its immunity under the Eleventh Amendment for suits in federal court. *See e.g. Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d. 512, 513 (D. Md. 2003).

Because the State's Attorney is a State official, the State of Maryland is the real party in interest. *Edelman v. Jordan*, 415 U.S. 651, 662-65 (1974) (finding that if damages would be payable from the state treasury, then the state is the real party of interest even though officials are the nominal parties); *Will*, 491 U.S. at 71 (finding no difference in a suit against a state officer in his official capacity and a suit against the state itself.) Because the State of Maryland has not waived its sovereign immunity, nor has the State's sovereign

immunity been abrogated by any of the legal theories advanced by plaintiff, a suit brought in federal court for money damages against the State's Attorney is an action against the State of Maryland and is barred by the Eleventh Amendment. *Metcalfe*, 506 U.S. at 144-45; Md. Code Ann., State Gov't. § 12-101(a)(8) (a state's attorney is "State personnel"). As a result, the official claims against the State's Attorney must be dismissed with prejudice.

II.     **THERE IS NO MONELL LIABILITY FOR THE ACTIONS OF A STATE OFFICIAL.**

A local government may be held liable under a 42 U.S.C. § 1983 claim for policy decisions when those policy decisions violate the civil rights of an individual. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-696 (1978). Since a State's Attorney is a State official, see Section I above, the actions of a State's Attorney are State action, not local government action. Accordingly, there can be no *Monell* liability. Since the only official capacity claims sound in *Monell* liability, they must be dismissed.

III.     **PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Since 42 U.S.C. § 1983 does not contain a statute of limitations, courts borrow the statute of limitations from the closest state-law cause of action. *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379. 388 (4th Cir. 2014). That statute is the one for personal injury cases. *Id*. In Maryland, the statute of limitations for personal injury actions is three years. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2025). While state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run. *Id*. at *389* (citing *Wallace v. Kato,*

549 U.S. 384, 388, (2007)). Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know of his injury. *Id*.

In the amended complaint, Mr. Huffington acknowledged that on November 1, 2011, a reporter gave him a copy of the 1999 letter that the State's Attorney received indicating that his expert witness' testing methods were inaccurate (ECF 16, ¶ 135). Mr. Huffington claimed that on November 9, 2017, he "entered an agreement with prosecutors to enter an *Alford* plea of guilty while formally maintaining his innocence. The decision was difficult for John, but facing a third trial and **aware of [the State's Attorney's] willingness to violate his rights, break the rules, and withhold and fabricate evidence,** he made the decision to end the threat of continued prosecution" (emphasis added) (ECF 16, ¶ 145)

In 2018, Mr. Huffington filed a bar complaint against the State's Attorney for misconduct and violations of the Maryland Attorneys' Rules of Professional Conduct (MARPC) (ECF 16, ¶ 155)[2].

In this case, the amended complaint acknowledges that Mr. Huffington knew or had reason to know of his injury or claim against the State's Attorney in his official capacity by 2018 when he filed his bar complaint. Certainly, his statement that he entered an *Alford* plea while aware of the State's Attorney's "willingness to violate his rights, break the rules, and withhold and fabricate evidence" indicated that he recognized the claim against the

---

[2] On October 21, 2021, the State's Attorney was disbarred for conduct relating to Mr. Huffington's case (ECF 16, ¶ 156).

State's Attorney in 2017 also. Mr. Huffington's comments were validated when the State's Attorney was disbarred in October 2021. Despite this knowledge, he did not file his complaint until July 2025, more than 3 years after the disbarment, more than six years after he filed the bar complaint and more than seven years after entering the *Alford* plea. Failure to comply with the applicable statute of limitations mandates dismissal of these claims.

## INCORPORATION BY REFERENCE

The State's Attorney, in an official capacity, incorporates by reference the arguments made by co-defendants.

## CONCLUSION

For the reasons above, the State's Attorney for Harford County respectfully requests that the official claims be dismissed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Wendy L. Shiff

_____
WENDY L. SHIFF
Assistant Attorney General
Federal Bar No. 09076
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
wshiff@oag.state.md.us
(410) 576-6996
(410) 576-6955 (facsimile)

Attorneys for Defendant
State's Attorney for Harford County

November 4, 2025

(official claims)

## CERTIFICATE OF SERVICE

I certify that, on this 4th day of November, 2025 the foregoing was served by CM/ECF on all registered CMF users.

/s/ Wendy L. Shiff
_____
Wendy L. Shiff