IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
-NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN NORMAN HUFFINGTON, | * | |
| Plaintiff | * | |
| v. | * | Case No. 1:25-cv-02313-BAH |
| DAVID SANEMAN, *et. al,* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT WESLEY J. PICHA'S MOTION TO DISMISS

Defendant, the Estate of Wesley J. Picha, ("Picha"), through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Reply Memorandum in Support of Defendant's Motion to Dismiss Amended Complaint filed by Plaintiff, John Huffington ("Huffington") and in support thereof states the following:

To differentiate the Defendants, and each allegation against whom as set forth in Plaintiff's Amended Complaint, the bald conclusory statements and legal conclusions alleged against Picha must be reiterated. They are as follows:

They read as follows:

Complaint, ¶ 21, reads: "Mr. Picha was a deputy with the Harford County Sheriff's Office whose conduct resulted in Plaintiffs wrongful arrest, conviction, and imprisonment." *Id*.

Complaint, ¶ 45, reads: "Hudson's best friend, Ernest Bohanan, had come to the Campground and briefly spoke with investigators. Bohanan left without providing much information, but phoned police later, around 6:30 p.m., to tell Defendant Wesley Picha that he could not talk down at the Campground because of all the people nearby, but that he knew who

1

killed Joe Hudson. Hudson had told Bohanan that he was in serious debt to his drug suppliers, namely a man named "'Phillip" who had paid a visit to Hudson's trailer two weeks earlier and threatened him. Hudson had told Bohanan that Phillip and his associates would "kill him if he didn't pay up." Hudson had not paid-up. Additional witnesses would tell police that Hudson and Becker were terrified for that reason and others." *Id*.

Complaint, ¶ 84, reads: "About 4:10 p.m., on the opposite side of the road, Saneman and Deno identified a clear, one-gallon, Smirnoff-branded vodka bottle - not a whiskey bottle - "lying in the wooded area approx. ten feet from the edge of the road" Despite John having allegedly wiped down the evidence, "[t]he bottle contained what appeared to be extensive blood stains on the bottom area and label area of the bottle." Defendant Picha initialed the bottle on the cap, photographed these items, and took them into custody. He did not, however, take the revolver and knife with him, which Saneman kept in the trunk of his car. A "torn note" was also recovered, according to the report." *Id*.

Complaint, ¶ 98, reads: "On May 27, at 5:10 p.m., Saneman gave the knife, sheath, gun, and holster to Picha. Saneman had them since the prior afternoon and put them into the trunk of his vehicle." *Id*.

Complaint, ¶ 99, reads: "Investigators' odd deference to Deno continued. At 5:21 p.m., on May 27, Picha responded to Deno's attorney's law office. There, the attorney turned over some of the clothing that he and Deno claimed that Deno wore during the murders, including a blue shirt, black pants, yellow/orange Hanes underwear, and socks (white with blue and yellow stripes). They noted that the clothes "had been washed using no bleach but warm water. [the attorney] also stated Ms. Kanaras advised that she had used Tide detergent to wash the clothes." Investigators did not ask when they were washed (or did not document it), despite the fact that they had alerted Mr.

2

Kanaras to the investigation prior to 6:00 p.m. on May 25, and they never sought a search warrant of the home." *Id*.

Complaint, ¶ 100, reads: "Nearly two hours later, at 7:08 p.m., Picha went to the Kanaras residence in Perry Hall, at the request of Deno's attorney, to pick up a jacket and shoes Deno claimed he had been wearing during the murders. Deno's father handed Picha "a shopping bag which contained one black leather jacket and one pair of brown boots." *Id*.

And Finally, Complaint, ¶ 101, reads: "Thereafter, Picha went to the Baltimore County Police Department, Fullerton Station, and advised an officer "of the situation of the Kanaras' (sic) possibly being in danger. [The officer] stated he would advise cars in the area to patrol the residence." *Id*.

Thus, of the 234 paragraphs in the Complaint, only ¶¶ 21, 45, 84, 98, 99, 100, 101 contain factual allegations against Picha, leading to Counts 1-3 and 6-10 which purport to set forth causes of action against Picha.

**Huffington's Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Mere conclusory statements or legal conclusions masquerading as factual allegations are insufficient. Huffington's complaint fails to allege specific facts connecting Picha to any alleged misconduct. The complaint groups Picha with other defendants without identifying his particular role or actions which constitute each cause of action for which Huffington seeks relief against Picha. This fails to meet the federal pleading standard, which requires factual allegations rather than mere conclusions.

3

**Picha is Entitled to Qualified Immunity**

Even accepting Huffington's allegations regarding the Bohanan statement, Complaint, ¶ 45, these allegations fail to establish a viable claim under *Brady v. Maryland*, 373 U.S. 83 (1963). To state a *Brady* claim, a plaintiff must show that (1) the evidence must be favorable to the accused, (2) the evidence was suppressed by the government, and (3) the suppressed evidence must be material and prejudiced the defense. *Id.*, see also *State v. Williams*, 392 Md. 194 (2006); *Atty. Griev. Comm'n of Md. v. Cassilly*, 476 Md. 309 (2021). Huffington has not alleged that Picha was personally involved in suppressing this evidence or that Picha had knowledge of its existence. Moreover, the complaint fails to establish that the alleged suppression by Picha was material to the outcome of Huffington's prosecution. Without these elements, the *Brady* claim cannot proceed against Picha; thus, Picha is entitled to Qualified Immunity.

**Huffington's Claims are Untimely**

Under federal law, claims under 42 U.S.C. § 1983 are governed by the statute of limitations for personal injury claims in the state where the alleged misconduct occurred. In Maryland, this period is three (3) years *Nicassio v. Bekman, Marder & Adkins, LLC*, 2023 Md. App. LEXIS 209 (2023). The accrual date for such claims is determined by federal law, which provides that a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action *Hecht v. Resolution Trust Corp.*, 333 Md. 324 (1993), *Arroyo v. Bd. of Educ.*, 381 Md. 646 (2004).

Huffington's argument that his claims accrued upon the 2023 gubernatorial pardon relies on *Heck v. Humphrey*, 512 U.S. 477 (1994). This claim and basis is inconsistent with federal precedent. Huffington admits this inconsistency in Doc. 60, Pg. 19, stating: "The Fourth Circuit Court of Appeals has not addressed the issue of whether a governor's pardon satisfies *Heck's*

favorable termination requirement." *Id*. Thus, per federal precedent, the statute of limitations began running when Huffington knew or should have known of the alleged misconduct, which occurred decades earlier during his criminal proceedings. The issuance of a pardon does not reset the limitations period for claims that accrued long before. The record demonstrates that Huffington was aware of the alleged suppression of exculpatory evidence, including the Bohanan statement, well before the 2023 pardon. Under federal law, the statute of limitations is not tolled simply because a plaintiff later obtains evidence supporting their claims. Huffington's claims are therefore time-barred.

**Conclusion**

For the foregoing reasons, Huffington's opposition fails to establish any basis for denying Defendant Picha's Motion to Dismiss. The complaint is time-barred, fails to state a claim upon which relief can be granted, and is barred by qualified immunity. The Court should grant the motion to dismiss in its entirety and dismiss all claims against the Estate of Wesley Picha with prejudice.

Respectfully Submitted,

*/s/ Tyler J. Nowicki*

Tyler J. Nowicki, Esq.
(Federal Bar No. 29581)
Nowicki & Associates, P.A.
727 North Hickory Avenue
Bel Air, Maryland 21014
P: 410-879-0026
F: 410-893-8199
Tnowicki@nowickifirm.com
*Attorneys for Defendant Picha*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2026, a copy of the foregoing was electronically filed and is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that the CM/ECF system will accomplish service, with notice to:

Hannah M Ernstberger, Esq.
Saller, Ernstberger, & McElroy
10 South Street
Ste Floor 6
Baltimore, MD 21202
P: 410-783-7945
hernstberger@sallerlaw.com

Brian Howard Eldridge, Esq.
Jay R Kasperbauer, Esq.
John Shannon Marrese, Esq.
Hart McLaughlin & Eldridge
1 S. Dearborn
Ste 1400
Chicago, IL 60603
P: 312-955-0545
F: 312-971-9243
beldridge@hmelegal.com
jkasperbauer@hmelegal.com
jmarrese@hmelegal.com
*Counsel for Plaintiffs*

Jefferson L. Blomquist, Esq.
Joseph G. Comeau, Esq.
J. Ethan Clasing, Esq.
Harford County Department of Law
220 S. Main Street, 3rd Floor
Bel Air, MD 21014
P: 410-638-3205
F: 410-879-7651
jlblomquist@harfordcountymd.gov
jgcomeau@harfordcountymd.gov
jeclasing@harfordcountymd.gov
*Counsel for Defendant,*
*Harford County, Maryland*

Jeffrey Gerard Comen, Esq.
4 Dalebrook Drive
Phoenix, Maryland 21131
P: 443-564-1902
jgc2646@verizon.net
*Counsel for Jeffrey Gerard Comen*
*as Personal Representative of the Estate of*
*Gerard Comen*

Diana Cassilly
402 Old Joppa Road
Fallston, Maryland 21047
*Defendant, As Personal Representative*
*of the Estate of Joseph Cassily*

James William Van Horn
807 Wiesser Court
Joppa, Maryland 21085
*Defendant, As Personal Representative*
*of the Estate of William Van Horn*

Kevin Karpinski, Esq.
Bently C. Green, Jr., Esq.
120 East Baltimore Street, Suite 1850
Baltimore, Maryland 21202
P: 410-727-5000
kevin@bkcklaw.com
bgreen@bkcklaw.com
*Counsel for Defendant,*
*David Saneman*

/s/ *Tyler J. Nowicki*
Tyler J. Nowicki, Esq.
*Attorneys for Defendant Picha*