IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN NORMAN HUFFINGTON | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 1:25-cv-02313-BAH |
| DAVID SANEMAN, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### DAVID SANEMAN'S REPLY TO PLAINTIFF'S OPPOSITION TO HIS MOTION TO DISMISS THE AMENDED COMPLAINT

David Saneman, one of the Defendants, by and through Karpinski, Cornbrooks & Karp, P.A., Kevin B. Karpinski, and Bently C. Green, Jr., his attorneys, submits this Reply to Plaintiff's Opposition to his Motion to Dismiss the Amended Complaint, and further states:

**Introduction**

  Plaintiff's Opposition fails to cure the fundamental and pervasive legal defects identified in Defendant Saneman's Motion to Dismiss. Rather than providing the specific factual allegations required to survive a motion to dismiss, the Opposition confirms that Plaintiff's claims against Saneman rest on a series of conclusory labels that seek to collapse distinct actors and various stages of the criminal process into a single, undifferentiated narrative of misconduct. Plaintiff's theory of liability is primarily animated by allegations concerning prosecutorial decision-making during and after the original criminal proceedings, yet he attempts to hold Saneman, an investigator, liable for charging, disclosure, and trial outcomes that fall outside the scope of investigative conduct. The Opposition (ECF 60) focuses heavily on alleged disclosure failures, evidentiary judgments, and post-conviction developments that are, by their nature, within the province of prosecutors and the courts rather than the investigating officers.

  As to Saneman specifically, Plaintiff continues to rely on collective references to "investigators" and generalized characterizations of interviews and reports without identifying a single fabricated document authored by Saneman or a specific piece of favorable evidence he personally suppressed in bad faith. Plaintiff's Opposition (ECF 60) argues that Saneman, as the purported "lead investigator," is responsible for the entirety of the alleged constitutional violations. However, this 'group-pleading' approach fails to allege Saneman's personal participation . The Opposition repeatedly attributes disclosure failures to "investigators" writ large and then pivots to Cassilly's conduct, yet it still does not plausibly allege that Saneman personally possessed any particular item of favorable evidence, knew it was favorable, and deliberately withheld it.

  Furthermore, Plaintiff's Opposition underscores that the disputes he seeks to litigate now are decades old and have been addressed repeatedly in prior proceedings. The core themes of Plaintiff's complaint – witness credibility disputes, forensic testimony challenges, and alternative-

suspect material – were examined at length by the United States Court of Appeals for the Fourth Circuit in *Huffington v. Nuth*, 140 F.3d 572 (4th Cir. 1998). In that decision, the Fourth Circuit concluded that the evidence of Plaintiff's guilt was "overwhelming" and that the claimed evidentiary weaknesses did not undermine confidence in the verdicts. This judicial finding is central to the current motion because it demonstrates that Plaintiff cannot plausibly plead that Saneman's conduct caused a deprivation of liberty or that any supposedly suppressed information was "material" in the constitutional sense. Saneman does not invoke *Nuth* as categorical preclusion; rather, it underscores Plaintiff's failure to plead materiality and proximate causation—essential elements of any fabrication- or *Brady*-based claim. Accordingly, the Amended Complaint should be dismissed as to Saneman.

I. **Qualified Immunity Bars Plaintiff's Claims Against Saneman Because the Amended Complaint Fails to Allege a Violation of a Clearly Established Right.**

Qualified immunity shields government officials from civil liability unless a plaintiff plausibly alleges both a violation of a constitutional right and that the right was clearly established at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine is intended to protect officials from the burdens of litigation and trial by providing immunity from suit rather than a mere defense to liability. *Harlow*, 457 U.S. at 818. Where a complaint fails to plausibly allege a constitutional violation, the official is not in need of immunity because the legal analysis ends immediately. *Evans v. Chalmers*, 703 F.3d 636, 646–49 (4th Cir. 2012) (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)).

Under the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must provide factual content that allows the Court to draw a reasonable inference of liability, rather than merely providing labels or

a formulaic recitation of the elements of a claim. Plaintiff's Opposition (ECF 60) fails this threshold because it does not sufficiently identify what Saneman specifically fabricated, how such evidence was false, or how it proximately caused a deprivation of liberty notwithstanding the intervening acts of prosecutors and the grand jury. Instead, the Opposition relies on sweeping conclusions ("fabrication," "suppression," "conspiracy") and then points to decades of litigation history and prosecutorial conduct as a substitute for pleading individualized facts against Saneman. That is not enough to state a plausible claim against Saneman.

       The Fourth Circuit has made clear that to state a claim for a constitutional violation against an investigator, a plaintiff must allege that the defendant's actions were the proximate cause of the plaintiff's injuries. *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) (quoting *Washington v. Wilmore*, 407 F.3d 274, 282–83 (4th Cir. 2005) ("[F]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty – i.e., his conviction and subsequent incarceration – resulted from the fabrication.")). Because the Fourth Circuit previously determined in *Nuth* that the evidence against Plaintiff was overwhelming, Plaintiff cannot establish that any investigative act by Saneman was the but-for or proximate cause of his conviction. *See Nuth*, 140 F.3d at 582–85. The Opposition asserts that Saneman fabricated evidence through witness Deno Kanaras, yet the record shows that Kanaras's testimony was consistent with the physical evidence recovered during the investigation – evidence that the Fourth Circuit found to be "overwhelming" and corroborative of Kanaras's account. *Id*. at 583–84.

       *Massey* is particularly instructive here because it recognizes that, even assuming arguendo that some statements were misleading, a plaintiff must still plausibly plead that the alleged fabrication caused the deprivation of liberty – i.e., that the conviction and incarceration "resulted

from" the fabrication. 759 F.3d at 354. Plaintiff's Opposition does not identify any discrete fabricated statement authored by Saneman, much less plead that Plaintiff's conviction and incarceration resulted from that particular fabrication rather than from the subsequent independent actions of prosecutors, a grand jury, and two trial juries.

Plaintiff's characterization of these investigative steps as "fabrication" is a legal conclusion that does not satisfy the requirements of Rule 8(a)(2). *See Iqbal*, 556 U.S. at 678. The Fourth Circuit has held that conclusory allegations of a conspiracy or fabrication are insufficient to overcome qualified immunity. *Jackson v. Carin*, 646 F. Supp. 3d 656, 671–72 (D. Md. 2022), *aff'd*, 128 F.4th 525 (4th Cir. 2025) (quoting *Gooden v. Howard Cnty.*, 954 F.2d 960, 969–70 (4th Cir. 1992) ("[T]he fact that a mistake was made cannot be dispositive" of qualified immunity, and that officers "cannot be held liable for failing to conduct a perfect investigation.")). Plaintiff fails to allege that Saneman personally authored any false reports or knowingly transmitted false information to the prosecution. As such, Saneman is entitled to dismissal of all claims based on qualified immunity.

Plaintiff's effort to collapse Cassilly's alleged *Brady* violations into claims against Saneman only highlights the pleading defect. Even if Plaintiff could plausibly allege that Cassilly mishandled disclosure obligations decades later, that does not establish that Saneman himself fabricated evidence or deliberately withheld material exculpatory evidence in 1981–1983.

## II.    Plaintiff's Claims for False Arrest and False Imprisonment Are Time-Barred by the Applicable Statute of Limitations.

Plaintiff's Opposition (ECF 60) attempts to circumvent the clear statute of limitations bar by arguing for a delayed accrual date based on a 2023 executive pardon. This argument fails because it misconstrues both the nature of the torts alleged and the controlling Supreme Court and Fourth Circuit authority.

Plaintiff's claims under 42 U.S.C. § 1983 are subject to a three-year statute of limitations, borrowed from the most analogous state-law cause of action. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014); 42 U.S.C. § 1988(a). In Maryland, the statute of limitations for personal-injury claims is three years. Md. Code Ann., Cts. & Jud. Proc. § 5–101; *see also Owens*, 767 F.3d at 388. Federal law governs the date on which this limitations period begins to run. *Owens*, 767 F.3d at 388–89 (citing *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007)). Under common-law principles, accrual occurs when a plaintiff has a complete and present cause of action – that is, when he knows or has reason to know of his injury. *Wallace*, 549 U.S. at 388.

Plaintiff argues in ECF 60 that under Owens, his claims for false arrest and false imprisonment should be treated identically to his malicious prosecution claims for accrual purposes to avoid "conflicting resolutions." This is a fundamental misstatement of the law. The Supreme Court in *Wallace* explicitly distinguished false imprisonment from malicious prosecution, holding that the *Heck* bar does not apply to false arrest or false imprisonment claims because those torts do not require the favorable termination of the underlying criminal proceedings. 549 U.S. at 393–94. While malicious prosecution centers on the wrongful initiation of legal process, false imprisonment protects against the "unlawful detention" itself. Consequently, a claim for false imprisonment accrues at the end of the detention period, not when a conviction is later vacated or a pardon is issued. *Wallace*, 549 U.S. at 389–92; *Owens*, 767 F.3d at 389–90.

Plaintiff's reliance on cases from other circuits regarding executive pardons (*see* ECF 60 at p. 12–14) is misplaced. Even assuming arguendo a pardon could satisfy favorable termination for malicious prosecution, *which it does not*, it has no bearing on the accrual of false imprisonment claims. Under *Wallace,* the statute of limitations for false imprisonment begins to run when the "alleged false imprisonment ends." *Wallace*, 549 U.S. at 389. Plaintiff was arrested on May 26,

1981, and his detention pending a new trial terminated, at the absolute latest, in July 2013 when he was released from custody. ECF 16 ¶¶ 78, 139. Therefore, Plaintiff's cause of action for false imprisonment was complete and present more than eleven years before he filed the instant action. *See Wallace*, 549 U.S. at 389 (accrual turns on the end of physical detention, not collateral consequences).

Moreover, treating a political pardon as resetting accrual for false-imprisonment claims would allow a later executive act to rewrite when a claim ripens, even though limitations law focuses on when custody ends and when a plaintiff knows the facts giving rise to his injury. The statute of limitations cannot depend on future political decisions; it runs from the end of detention and the plaintiff's awareness of the underlying facts, not from a subsequent grant of clemency.

Even if this Court were to apply the most generous interpretation of the discovery rule, all facts underpinning Plaintiff's allegations – his arrest, the allegedly fabricated evidence from 1981, and his subsequent detention – were known or reasonably should have been known to him decades ago, as evidenced by the litigation in *Nuth*. *See Owens*, 767 F.3d at 388–90; *Nuth*, 140 F.3d 572 (4th Cir. 1998). There is no legal basis to toll the limitations period until 2023.

Furthermore, even if the claims were timely, the Amended Complaint fails to state a viable cause of action for false imprisonment. To establish this claim under Maryland law, a plaintiff must show: the deprivation of liberty without consent and without legal justification. *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 330–31 (D. Md. 2012); *see also Heron v. Strader*, 361 Md. 258, 264 (2000). Maryland law further requires "some direct restraint of the person," through force or threat of force. *Mason v. Wrightson*, 205 Md. 481, 487 (1954).

Plaintiff has not alleged that Saneman personally restrained him or used force. Saneman's role was limited to the investigation, interviewing witnesses, and gathering of facts to develop

probable cause. More importantly, Plaintiff cannot establish a lack of "legal justification." Plaintiff's arrest and imprisonment were supported by multiple judicial determinations of guilt and ultimately by his own Alford plea in 2017. ECF 16 ¶ 145. An Alford plea is a valid Maryland conviction that supplies legal justification for detention. *See Daulatzai v. Maryland*, 340 F.R.D. 99, 104 (D. Md. 2021) (An Alford plea is not a favorable outcome that would permit Plaintiff to meet the favorable-outcome element of his claim.). Because the elements of false arrest and false imprisonment are identical, and because Plaintiff's detention was supported by legal process and valid convictions, Counts III, VII, and VIII must be dismissed. *See Gray v. Maryland*, 228 F. Supp. 2d 628, 641 (D. Md. 2002).

Plaintiff's contrary position would allow a political pardon to retroactively convert decades-old, judicially sanctioned custody into "unlawful detention," even though no court ever vacated or invalidated the convictions that justified that custody. That is precisely the kind of displacement of judicial authority by executive grace that limitations doctrine does not permit.

**III.    The Malicious Prosecution Claims Fail Because the Criminal Proceedings Did Not End in a Favorable Termination.**

To state a claim for malicious prosecution under § 1983 or Maryland law, a plaintiff must show that the underlying criminal proceeding terminated in his favor. *Thompson v. Clark*, 596 U.S. 36, 39 (2022); *Heron*, 361 Md. at 264. Plaintiff's 2017 conviction, entered via an Alford plea, does not constitute a favorable termination. An Alford plea is a variation of a guilty plea where the defendant agrees that the State's evidence is sufficient to convict, even while maintaining innocence. *See Daulatzai*, 340 F.R.D., at 104.

The Supreme Court has held that a § 1983 claim for damages is barred if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Because Plaintiff's Alford plea remains a valid, standing

conviction that has not been vacated or set aside by a court, his malicious prosecution claim is barred by *Heck*. *Id*.

The 2023 gubernatorial pardon is an act of executive clemency and does not constitute a judicial finding of innocence that would satisfy the favorable termination requirement. Plaintiff's Opposition (ECF 60) incorrectly argues that the pardon satisfies the favorable termination rule. But Plaintiff's reliance on out-of-circuit authorities turns on a legal premise that does not fit Maryland: those cases treat a pardon as functionally equivalent to expungement or vacatur for purposes of the plaintiff's conviction record.[1] *See* ECF 60, at p. 13. Those decisions rest on the premise that the pardon at issue operated, as a matter of state law, like an expungement or judicial vacatur of the conviction. That premise does not hold in Maryland. *Heck* requires that a conviction be "reversed on direct appeal, **expunged by executive order**, declared invalid by a state tribunal, or called into question by a federal writ of habeas corpus." 512 U.S. at 486–87 (bold added). Maryland does not treat a pardon as an automatic expungement or vacatur, and Plaintiff does not (and cannot) allege that his convictions were "expunged by executive order." *See id*. To the contrary, Maryland law makes expungement based on a pardon available only in narrow circumstances – circumstances Plaintiff does not satisfy. *See* Md. Code Ann., Crim. Proc. § 10-105(a)(8).

---

[1] *See, e.g.*, Carr v. Louisville-Jefferson Cnty., 37 F.4th 389, 391, 395 (6th Cir. 2022) (treating a gubernatorial pardon as the equivalent of "expungement by executive order" for *Heck* purposes); *Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020) (same); *Wilson v. Lawrence Cnty., Mo.*, 154 F.3d 757, 761 (8th Cir. 1998) (same); *Snyder v. City of Alexandria*, 870 F. Supp. 672, 681 (E.D. Va. 1994). The Fourth Circuit has not squarely addressed whether a gubernatorial pardon satisfies *Heck*'s favorable-termination requirement, and in any event these cases are inapposite because they rest on state-law regimes in which a pardon operated, as a practical matter, like an expungement or judicial vacatur. Maryland law does not treat Plaintiff's pardon that way, and § 10-105(a)(8) makes clear that expungement based on a pardon is unavailable to Plaintiff here.

Under § 10-105(a)(8), expungement based on a full and unconditional pardon is available only where the person "is convicted of only one criminal act, and that act is not a crime of violence." *Id*. Nothing in the Opposition alleges that Plaintiff satisfies the statutory prerequisites for expungement based on a pardon under § 10-105(a)(8). Accordingly, unlike the regimes described in the out-of-circuit cases Plaintiff cites, the pardon did not operate as an expungement, nor did it vacate the conviction by judicial action. That distinction matters under *Heck* because Plaintiff still asks this Court to award damages premised on the invalidity of a conviction that has not been set aside by a court. In short, Plaintiff invokes cases where a pardon functioned as an expungement; in Maryland, his pardon did not – and *Heck* requires the former, not merely the latter.

Allowing this claim to proceed would result in a collateral attack on a valid state court conviction, which is forbidden under *Heck*. 512 U.S. at 484–86. Consequently, Plaintiff's claims for malicious prosecution in Counts II and IX must be dismissed for failure to state a claim.

## IV.    Plaintiff's Due Process Claim Fails to Allege Materiality or Causation.

A Due Process claim based on the fabrication or suppression of evidence requires a showing that the misconduct was material, meaning there is a reasonable probability that, but for the misconduct, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *Nuth*, the Fourth Circuit reviewed the very same categories of evidence Plaintiff now challenges, including Deno Kanaras's testimony and the forensic hair analysis, and determined that the evidence of guilt was "overwhelming." 140 F.3d at 582–85.

The Fourth Circuit specifically noted that the prosecution's case rested on substantial evidence, including the recovery of murder weapons (a revolver and a knife) and blood-stained items from locations identified by Deno Kanaras, which corroborated the testimony of the State's

witnesses. *Nuth*, 140 F.3d at 583–84. The Fourth Circuit concluded that even if the forensic hair evidence or witness impeachment material had been different, the remaining evidence of guilt – including Plaintiff's presence at the scene and his possession of the victims' property – was sufficient to maintain confidence in the verdict. *Id*. at 584.

Because a federal appellate court has already determined that the challenged evidence did not undermine the integrity of the conviction, Plaintiff cannot plausibly allege that Saneman's investigative actions were the proximate cause of his deprivation of liberty. Furthermore, investigators are generally not liable for Due Process violations where the prosecutor makes an independent decision to bring charges, as the prosecutor's actions serve as an intervening cause that breaks the chain of causation. *Evans*, 703 F.3d at 647–48. Plaintiff has not alleged that Saneman misled the prosecutor through specific false statements or documents, which is required to overcome the intervening cause of prosecutorial discretion.

In addition, even where a plaintiff attempts to plead *Brady* materiality, Fourth Circuit law still requires plausibly pleaded causation: "fabrication of evidence alone is insufficient" absent adequate facts showing the loss of liberty "resulted from the fabrication." *Massey*, 759 F.3d at 354 (quoting *Washington v. Wilmore*, 407 F.3d 274, 282–83 (4th Cir. 2005)). The Opposition does not bridge that gap with particularized allegations as to Saneman.

Moreover, Plaintiff's Opposition recycles the same categories of evidence that the Fourth Circuit already examined and rejected in *Nuth*. 140 F.3d 572. Plaintiff now asserts that investigators "fabricated" Deno Kanaras's account and "suppressed" evidence regarding, among other items, Stephen Rassa and Paul Vela's statements about Kanaras, the Aschenbach file concerning Becker's alleged informant status, Kanaras's washing of his car and clothing, and generalized "alternative suspect" material related to drug debts and threats. *See* ECF 60 at 5. But

each of these themes was squarely before the courts in the prior litigation and does not plausibly establish fabrication, suppression, or materiality now. *See Nuth*, 140 F.3d 572.

The Fourth Circuit expressly considered Rassa's testimony, acknowledged that it would have been impeachment material at most, and found it insufficiently reliable and too attenuated to undermine confidence in the verdict. *Nuth*, 140 F.3d at 584-85. Indeed, the court explained that Rassa's statement to Paul Vela had "little corroborative value," noting that Rassa omitted key details when speaking to Vela, made the statement only after learning of the murders from the media, and had motive to shift blame because he feared Kanaras might implicate him; the court concluded that these circumstances "hardly instill confidence" in Rassa's reliability. *Id*. Likewise, the court reviewed the physical evidence (including the vodka bottle, the gun, ammunition, bleach-stained pants, and hair evidence) and held that the State's case was supported by "overwhelming" corroborating evidence independent of Kanaras's testimony. *Id*. at 582. The court also rejected Huffington's effort to admit Rassa's prior testimony, holding that the transcript was properly excluded because the State lacked a similar motive to develop that testimony in the earlier Kanaras proceeding. *Id*. at 583–84. Rebranding these issues as 'Brady' or 'fabrication' claims against Saneman does not alter that the Fourth Circuit already adjudicated them and found them immaterial to guilt. *Id*.

Plaintiff's narrative also mischaracterizes the historical record by portraying these matters as hidden from the defense, when in fact many were litigated at trial or reflected strategic choices by counsel. For example, the existence of Rassa, Aschenbach, and other witnesses was known to the defense; the Fourth Circuit held that counsel made tactical decisions about how and when to use them, not that investigators concealed them. *Id*. at 580. (explaining that the cases on which Huffington relied involved "alibi witnesses or eyewitnesses critical to the determination of guilt,"

whereas "none of [his] proffered witnesses fall into those categories."). The court observed that counsel already had transcripts from the Kanaras trial and Huffington's first trial and therefore knew the substance of what witnesses like Wagner, Aschenbach, Hall, and Norris Huffington would say; the Sixth Amendment does not require counsel to re-interview every witness whose testimony is already known. *Id*. at 580. The Fourth Circuit also emphasized that Huffington himself had characterized many of these witnesses as mere "character" witnesses, reinforcing that counsel's decision not to call them at the guilt phase was a reasonable tactical choice. *Id*. at 580–81 (citing *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066-67, 80 L.Ed.2d 674 (1984)).

Similarly, Plaintiff's attempt to reframe investigative choices as "fabrication" ignores that the State's case never rested solely on Kanaras. As the Fourth Circuit explained, the prosecution presented substantial independent physical and forensic evidence corroborating Kanaras's account, including the recovery of the murder weapons and ammunition from locations Kanaras identified, bleach-stained pants found in a dumpster, a bottle of bleach and cocaine found in Huffington's apartment, a vodka bottle bearing Huffington's fingerprint, microscopic hair matches to Huffington on items from the trailer, and ballistics evidence tying recovered bullets to the recovered gun. *Nuth*, 140 F.3d at 577–78. The court explained that trial counsel made a tactical choice not to cross-examine the FBI fingerprint expert on timing, yet still pressed the point in closing that the State could only speculate as to when the print was left – confirming that the issue was presented to the jury, not concealed. *Nuth*, 140 F.3d at 583. The court further noted that Huffington himself initially told police he went straight from the Golden Forty to the Fiddler's Convention, then changed his story when confronted and admitted going to the trailer with Kanaras after the bar closed. *Id*. at 578. Against that backdrop, Plaintiff's generalized assertions that

investigators "fabricated" a narrative through Kanaras are inconsistent with the evidentiary record that both juries and the Fourth Circuit found compelling.

V.     **Plaintiff Is Collaterally Estopped from Relitigating the Materiality of the Evidence.**

Under the doctrine of collateral estoppel, a party is precluded from relitigating an issue of fact or law that was "actually litigated and decided in a prior judicial proceeding." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). The Fourth Circuit's findings in *Nuth* regarding the strength of the trial evidence and the lack of materiality regarding forensic and witness issues strongly undermine (and, in key respects, foreclose) Plaintiff's attempt to relitigate. 140 F.3d at 582–85. Plaintiff had a full and fair opportunity to litigate these issues during his federal habeas proceedings, and the court reached a final judgment on the merits.

Plaintiff cannot now claim in a civil suit that this same evidence was material enough to cause a constitutional violation when a federal court has already held to the contrary. *Todd v. Baskerville*, 712 F.2d 70, 74 (4th Cir. 1983); *Holsey v. Bass*, 519 F. Supp. 395, 417 (D. Md. 1981). This doctrine is essential to promote finality and prevent inconsistent judicial findings. *Lowery*, 92 F.3d at 223. Because the evidentiary issues at the heart of the Amended Complaint were necessarily resolved in *Nuth*, Plaintiff is estopped from relitigating them here. A subsequent political pardon cannot undo or displace the preclusive effect of prior judicial determinations that remain intact. In particular, the question Plaintiff re-packages here – whether the categories of impeachment, forensic, or alternative-suspect evidence would have undermined confidence in the verdict – was actually litigated and decided in Nuth and was necessary to its judgment.

Plaintiff's own procedural history further reinforces, rather than weakens, preclusion. After DNA testing in 2012 led to the grant of a new trial, Plaintiff did not obtain a judicial declaration of innocence or a dismissal of charges. Instead, in 2017 he elected to enter an Alford plea, which is an admission that the State still possessed sufficient evidence to convict him – even after the

DNA issues he now relies upon. That choice left the core judicial findings regarding the strength of the State's case intact and underscored that the evidentiary disputes Plaintiff continues to press had already been adjudicated against him. This is consistent with the Fourth Circuit's determination in *Nuth* that the evidence of guilt was overwhelming. *See generally*, 140 F.3d 572.

Plaintiff's Opposition does not meaningfully grapple with this point. Instead, he suggests that his 2023 gubernatorial pardon should wipe the slate clean for preclusion purposes. That premise is incorrect. A political pardon is not a judicial determination of innocence, does not vacate a conviction, and does not erase prior adjudications that were fully litigated and resolved on the merits. Allowing an executive act to retroactively nullify the preclusive effect of final federal judgments would improperly substitute politics for judicial decision-making in determining the legal consequences of a conviction.

Moreover, the cases Plaintiff invokes to resist estoppel do not involve situations where relief rested solely on a political pardon. In *Washington v. Pellegrini*, the state court granted a writ of actual innocence – a judicial determination that conflicted with earlier post-conviction findings, which is why collateral estoppel did not apply. 125 F.4th 118, 121 (4th Cir. 2025). In *Owens*, a state court granted a new trial after exculpatory DNA testing, and the State then entered a nolle prosequi, terminating the prosecution. 767 F.3d 379, 387. And in *Gilliam v. Sealey*, a state court vacated the convictions and dismissed the charges with prejudice based on new DNA evidence and findings of the North Carolina Innocence Inquiry Commission. 932 F.3d 216, 226 (4th Cir. 2019). Each of those cases turned on judicial invalidation of a conviction or dismissal of charges, not on executive clemency alone.

Here, by contrast, Plaintiff's convictions were not vacated by any court, no new trial was granted after 2017, and no charges were dismissed with prejudice. The only intervening event is a

political pardon, which leaves the underlying judicial determinations, including the federal habeas judgment in *Nuth*, intact. Plaintiff therefore cannot avoid collateral estoppel simply by pointing to a pardon that did not disturb the prior adjudications he now seeks to relitigate.

### VI. The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law.

To state a claim for Intentional Infliction of Emotional Distress (IIED) under Maryland law, a plaintiff must show conduct so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Harris v. Jones*, 281 Md. 560, 566–67 (1977). This is a high burden rarely met in civil litigation. *Id*. Pleading the elements of another tort, such as false arrest or malicious prosecution, is insufficient to sustain an IIED claim. *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514 (1995).

Plaintiff's Opposition (ECF 60) relies on generalized allegations of "outrageous misconduct" without identifying specific acts by Saneman that meet this extreme threshold. Under Maryland law, an IIED claim cannot be used as a "catch-all" for other tortious conduct. *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1998). Because Plaintiff has failed to allege specific, non-conclusory acts of misconduct by Saneman that are distinct from his time-barred or legally insufficient claims for false arrest and malicious prosecution, Count X must be dismissed. Plaintiff likewise fails to allege conduct by Saneman that meets Maryland's demanding "extreme and outrageous" standard under *Harris*; at most, he repackages investigative actions that were previously reviewed in *Nuth*, a case in which the Fourth Circuit concluded the evidence of guilt was "overwhelming," which underscores how far Plaintiff's allegations fall short of conduct that is "utterly intolerable in a civilized [community]." *See Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023); *see also Harris v. Jones*, 281 Md. at 566; *see also Nuth*, 140 F.3d at 582–85.

## Conclusion

For the reasons stated above and in David Saneman's Memorandum in Support, the Amended Complaint fails to state a claim upon which relief can be granted as to David Saneman. David Saneman, therefore, respectfully requests that this Honorable Court dismiss the Amended Complaint with prejudice, and grant any such other relief as the cause may demand.

                                                  Respectfully submitted,

                                                  Karpinski, Cornbrooks & Karp, P.A.

By:    /s/ Kevin B. Karpinski
          Kevin B. Karpinski
          Federal Bar No. 11849
          kevin@bkcklaw.com

By:    /s/ Bently C. Green, Jr.
          Bently C. Green, Jr.
          Federal Bar No. 31006
          bgreen@bkcklaw.com
          120 East Baltimore Street, Suite 1850
          Baltimore, Maryland 21202
          410-727-5000
          *Counsel for Defendant,*
          *David Saneman*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 6th day of February 2026, a copy of the foregoing was electronically filed, with notice to:

Jefferson L. Blomquist
Joseph G. Comeau
J. Ethan Clasing
Harford County Department of Law
220 S. Main Street, 3rd Floor
Bel Air, MD 21014
410-638-3205 – phone
410-879-7651 – facsimile
jlblomquist@harfordcountymd.gov
jgcomeau@harfordcountymd.gov
jeclasing@harfordcountymd.gov
*Counsel for Defendant,*
*Harford County, Maryland*

Jeffrey Gerard Comen
4 Dalebrook Drive
Phoenix, Maryland 21131
443-564-1902
Email: jgc2646@verizon.net
*Counsel for Jeffrey Gerard Comen*
*as Personal Representative of the Estate of*
*Gerard Comen*

Diana Cassilly
402 Old Joppa Road
Fallston, Maryland 21047
*Defendant, As Personal Representative*
*of the Estate of Joseph Cassily*

Bernadette M Picha
411 Aggies Circle, Unit D
Bel Air, Maryland 21014
*Defendant, As Personal Representative*
*of the Estate of Wesley J. Picha*

James William Van Horn
807 Wiesser Court
Joppa, Maryland 21085
*Defendant, As Personal Representative*
*of the Estate of William Van Horn*

Hannah Ernstberger
Saller Ernstberger & Mcelroy
10 South Street, #600
Baltimore, Md 21202
(410) 783-7945
Hernstberger@Sallerlaw.com

Brian Eldridge*
John Marrese*
Jay Kasperbauer*
Hart Mclaughlin & Eldridge, Llc
One South Dearborn, Suite 1400
Chicago, Il 60603
(312) 955-0545
Beldridge@Hmelegal.com
Jmarrese@Hmelegal.com
Jkasperbauer@Hmelegal.com

Joshua M. Levin**
Benjamin A. Berkman**
Romanucci & Blandin, Llc
321 North Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000
Aromanucci@Rblaw.net

*Admitted pro hac vice
**Seeking pro hac vice admission
*Counsel for Plaintiffs*

      /s/ Kevin Karpinski
      *Counsel for Defendant,*
      *David Saneman*